UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CRISTIAN M. LOGA-NEGRU,

Petitioner,

Case No. 26-cv-449-pp

v.

ROBERT MILLER,

Respondent.

**ORDER DENYING WITHOUT PREJUDICE MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 7), DENYING PETITION FOR WRIT OF *HABEAS CORPUS* (DKT. NO. 1), DISMISSING CASE AND DENYING CERTIFICATE OF APPEALABILITY**

On March 19, 2026, the petitioner filed this fourth petition for writ of *habeas corpus* under 28 U.S.C. §2254, challenging his 2016 judgment of conviction. Dkt. No. 1. The petitioner had entered a no-contest plea to the charge of first degree intentional homicide after officers found him standing over the dead body of his estranged wife, who was covered in blood. State v. Loga-Negru, Appeal No. 2023AP111-CR, 2024 WL 1756139 (Wis. Ct. App. Apr. 24, 2024). The Racine County Circuit Court sentenced the petitioner to life in prison with the possibility of extended supervision after thirty years. Id. The petitioner filed a direct appeal and several postconviction motions, and the Wisconsin Court of Appeals affirmed the conviction in a July 2021 *per curium* decision. State v. Loga-Negru, Case No. 2019AP1023-CR, 2021 WL 2945590 (Wis. Ct. App. July 14, 2021).

1

With respect to the instant petition, the petitioner hasn't paid the filing fee. On March 20, 2026, the clerk's office sent the petitioner a letter requesting a copy of his six-month, certified prisoner trust account statement. Dkt. No. 2. The court received from the petitioner a "judicial notice," dkt. no. 4, and a "supplement," dkt. no. 5, but did not receive a trust account statement. After the clerk's office sent a second letter requesting payment of the filing fee or a motion to proceed without prepaying it along with a six-month certified trust account statement, the court received from the petitioner a motion for leave to proceed without prepaying the filing fee, but he never has filed his trust account statement. Dkt. No. 7.

For the reasons explained below, the court will deny without prejudice the petitioner's motion to proceed without prepaying the filing fee, deny the petition, dismiss the case and decline to issue a certificate of appealability.

## I. Petitioner's Motion to Proceed Without Prepaying the Filing Fee (Dkt. No. 7)

The petitioner's motion to proceed without prepaying the filing fee states that he is not employed in the institution, does not have dependents, owns a car but is not sure of the value and does not own a home. Dkt. No. 7 at 2. The petitioner also states that he has a cash, checking or savings account but that the account "fluctuates" below $100. Id. In the May 11, 2026 motion, the petitioner said that he would submit a disbursement request to cover the $5 filing fee. Id. at 4. That was over two months ago, and the court has not received his filing fee; the court observes that the petitioner paid the $5 filing fee in his previous *habeas* petitions in this district, which challenged the same

2

underlying conviction. <u>Loga Negru v. Miller</u>, Case No. 25-cv-1647; <u>Loga Negru v. Hepp</u>, Case No. 22-cv-871; <u>Loga Negru v. Hepp</u>, Case No. 22-cv-648. Because the petitioner never submitted his trust account statement, the court will deny without prejudice his motion to proceed without prepaying the filing fee. Although it is denying the petitioner's motion, the court will nonetheless screen the petition.

## II.     **Legal Standard**

Rule 4 of the Rules Governing §2254 Cases states:

> If it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner. If the petition is not dismissed, the judge must order the respondent to file an answer, motion or other response within a fixed time, or to take other action the judge may order.

A court allows a *habeas* petition to proceed unless it is clear that the petitioner is not entitled to relief in the district court.

At the screening stage, the court reviews the petition and exhibits to determine whether the petitioner alleges that he is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. §22554(a). If the state court denied the petition on the merits, this court can grant the petition only if the petitioner is in custody as a result of: (1) "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court, or (2) "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. §2254(d).

3

The court also considers whether the petitioner filed the petition within the limitation period, exhausted his state court remedies and avoided procedural default. Generally, a state prisoner must file his *habeas* petition within one year of the judgment becoming final. 28 U.S.C. §2254(d)(1)(A). In addition, a petitioner incarcerated under a state court judgment must exhaust the remedies available in the state courts before the district court may consider the merits of his federal petition. 28 U.S.C. §2254(b)(1)(A). Even if a petitioner has exhausted a claim, the district court may still be barred from considering the claim if the petitioner failed to raise the claim in the state's highest court in a timely fashion or in the manner prescribed by procedural laws. See Thomas v. McCaughtry, 201 F.3d 995, 1000 (7th Cir. 2000).

### III.    Procedural History

The Wisconsin Court of Appeals recounted the underlying facts that gave rise to the petitioner's conviction:

> On November 19, 2014, Village of Mount Pleasant police responded to reports of screaming outside of a residence and a female being dragged into a car. Upon arrival, they were met by a man who informed them that the victim had been kidnapped by her estranged husband, [the petitioner]. The man explained that he was the victim's employer and that she had been staying with him because she "was involved in an abusive relationship and felt threatened for her life." Police observed drag marks on the ground and located a black, metal hatchet with strands of what appeared to be human hair and blood.
>
> While at the scene, police were advised of an emergency call about a female with an ax or hatchet injury at a nearby hotel. Police went to the hotel and found [the petitioner] standing over a woman lying in the backseat of a vehicle. The woman—[the petitioner's] estranged wife—was covered in blood and appeared lifeless. She soon succumbed to her injuries, which included "multiple chop

4

wounds and blunt force injuries." [The petitioner] asked police if they could give him the death penalty right then and shoot him.

Police executed a search warrant of [the petitioner's] hotel room and found a copy of a restraining order that the victim had obtained against him. In addition, they found a receipt showing that [the petitioner] had attempted to purchase a pistol the day before.

Also present at the hotel was [the petitioner's] father, Marius. Marius told police that he had flown into the country three days earlier from Romania where he and his son are from. He said that his son had been having "marital problems" and that law enforcement recently confiscated his son's gun due to a domestic incident. Marius said that his son had left the hotel and returned covered in blood. When Marius asked what had happened, [the petitioner] replied that he had killed his estranged wife.

On November 21, 2014, the State filed a complaint charging [the petitioner] with first-degree intentional homicide, mayhem, and kidnapping. That same day, [the petitioner] made an initial appearance with Attorney Patrick Cafferty, who was covering intake for the State Public Defender. Cafferty requested that [the petitioner] undergo a competency evaluation, explaining, "There does appear to be some evidence of recent interaction with mental health professionals. And based on my conversation with him, I think ... there are competency issues that need to be addressed."

After a finding of probable cause for the crimes, the circuit court issued an order for a competency evaluation. An appointed psychologist examined [the petitioner] and filed a report on December 10, 2014. In it, he concluded that while [the petitioner] suffered from depression, he was competent to stand trial and "demonstrated the substantial mental capacity to understand the legal proceedings and assist in his defense."

The next day, the circuit court held a status on the case. The State noted that [the petitioner] did not qualify for State Public Defender representation and had not retained counsel. [The petitioner] indicated that he had spoken with an attorney and requested a three-week adjournment. The court denied the request, reasoning that [the petitioner] had had ample time to seek counsel. It further noted that [the petitioner] held two law degrees himself—one from Romania and one from the John Marshall School of Law. Accordingly, it set the matter over for the following week.

5

The next week, the circuit court held another status on the case. Again, [the petitioner] appeared without counsel, informing the court that he would soon secure the funds to hire one. The court inquired whether [the petitioner] challenged his competency to stand trial. [The petitioner] answered, "No. I believe that I am competent to stand trial." The State also did not challenge [the petitioner's] competency. The court made a record, noting that at the last appearance [the petitioner's] "demeanor was totally appropriate," he had "responded to the Court's questions appropriately," and he was "on track with the Court not only physically, but emotionally and intelligently." Based on its observations and the psychologist's uncontested report, the court found [the petitioner] competent to proceed.

On December 30, 2014, Cafferty filed a notice of appearance indicating that [the petitioner] had retained him as counsel. He also filed a demand for discovery and waiver of the preliminary hearing. The State, in turn, filed an information, charging [the petitioner] with the same crimes as in the initial complaint.

[The petitioner] entered a plea of not guilty by reason of mental disease or defect (NGI). He subsequently reached an agreement with the State where he would plead no contest to the charge of first-degree intentional homicide in the first/guilt phase of the NGI trial. In exchange, the State would dismiss the mayhem and kidnapping charges. The State filed an amended information to reflect this agreement.

Upon entry of [the petitioner's] no contest plea, the matter proceeded to the second/responsibility phase of the NGI trial, which was held before the circuit court in July 2016. The parties presented competing experts regarding [the petitioner's] ability to conform his conduct to the requirements of law. Ultimately, the court found the State's expert more credible and concluded that [the petitioner] had "not met his burden to support his NGI plea." It then sentenced him to life imprisonment with the possibility of extended supervision after thirty years.

After sentencing, [the petitioner] elected to proceed pro se and filed several postconviction motions for relief. He argued, among other things, that (1) the circuit court erred in determining his competency to stand trial; (2) he was improperly deprived of counsel at the court's competency determination; (3) the State committed a Brady violation when it failed to disclose certain evidence; (4) he is entitled to plea withdrawal due to a breach of his plea agreement; (5) his trial counsel was ineffective; and (6) the prosecutor engaged in

6

misconduct. Following multiple hearings, the circuit court denied the motions in two orders.

Loga-Negru, 2021 WL 2945590, at *1-2.

The Wisconsin Court of Appeals rejected all the petitioner's claims. Id. The Supreme Court of Wisconsin denied his petition for review, State v. Loga-Negru, 993 N.W.2d 156 (Table), 2021 WL 9781478, (Wis. Nov. 17, 2021), and on March 28, 2022, the United States Supreme Court denied his petition for writ of *certiorari*. Loga-Negru v. Wisconsin, Case No. 21-7009, 142 S. Ct. 1427 (Table), 2022 WL 892183, (2022).

The petitioner filed several Wis. Stat. §974.06 postconviction motions in 2022 and 2023, which the state circuit court denied. State v. Loga-Negru, Case No. 2023AP1532, 2024 WL 4690292 (Wis. Ct. App. Nov. 6, 2024). The Wisconsin Court of Appeals affirmed, summarizing the petitioner's arguments as follows:

> Between September 2022 and February 2023, [the petitioner] filed a number of Wis. Stat. § 974.06 postconviction motions, all of which were denied by the circuit court. In September 2022, he filed a postconviction motion in which he argued: (1) the criminal complaint lacked sufficient allegations to confer jurisdiction over him; and (2) the circuit court lost jurisdiction over him by failing to hold a timely bail hearing. In November 2022, [the petitioner] filed a motion to withdraw his plea based on newly discovered evidence and ineffective assistance of counsel. He claimed: (1) his postconviction counsel, who withdrew at [the petitioner's] request because [the petitioner] wanted to proceed pro se, provided ineffective assistance for failing to conduct a sufficient investigation; and (2) newly discovered evidence about statements from the victim's co-workers about the victim being fearful of [the petitioner] was exculpatory. In December 2022, [the petitioner] filed a motion in the circuit court requesting DNA testing of the hatchet used in the homicide. In January 2023, [the petitioner] filed a motion asking the court to reconsider its order denying his motion seeking plea withdrawal. In February 2023, [the petitioner] filed a motion in the circuit court

7

> seeking postconviction discovery related to the victim's business dealings and finances. We affirmed the circuit court's orders denying these motions. *State v. Loga-Negru*, No. 2023AP111-CR, unpublished slip op. and order (WI App Apr. 24, 2024).
>
> At issue here are two additional motions. In July 2023, [the petitioner] filed a "Motion to Invalidate the Preliminary Hearing Decision" in the circuit court. In August 2023, [the petitioner] filed a "Demand for Discovery Inspection Witness Cross-examination" seeking a list of evidence from the district attorney's office. The circuit court denied both motions, giving as one reason the procedural bar based on *State v. Escalona-Naranjo*, 185 Wis. 2d 168 . . . (1994).
>
> [The petitioner] now appeals the denial of these two motions. His pro se motions and appeal briefs are difficult to decipher. His main points on appeal seem to be that he received ineffective assistance of counsel at his preliminary hearing and sentencing hearing. The State responds that [the petitioner's] claims are all procedurally barred by *Escalona-Naranjo*, are insufficiently developed, or have been forfeited. We agree with the State.

Id., at *1-2. In a footnote, the Wisconsin Court of Appeals added that the petitioner had forfeited all nonjurisdictional claims when he entered his no contest plea and that he had abandoned the two jurisdictional claims by failing to raise them in his opening brief. Id. at *2, n.2. The Wisconsin Supreme Court denied the petition for review. State v. Loga-Negru, Case No. 2023AP001532, 23 N.W.3d 204 (Table), 2025 WL 1498219, (Wis. March 13, 2025).

In this federal district court, the petitioner has filed four *habeas* petitions challenging the same underlying conviction. On June 1, 2022, the petitioner filed his first §2254 petition, arguing ineffective assistance of counsel, incompetency to stand trial, ineffective assistance of appellate counsel and "prejudgment disposition." Loga-Negru v. Hepp, Case No. 22-cv-648-LA, Dkt. No. 1. Nine months later, the petitioner filed a second petition, which was

8

assigned to the same judge—Judge Adelman. <u>Loga-Negru v. Hepp</u>, Case No. 22-cv-781-LA. Because the petitioner was challenging the same conviction, Judge Adelman allowed the petitioner to choose which case he wished to pursue. After the petitioner chose to proceed with Case No. 22-cv-781, Judge Adelman dismissed Case No. 22-cv-648. <u>Loga-Negru</u>, Case No. 22-cv-648, Dkt. No. 14. The Seventh Circuit denied the petitioner's request for a certificate of appealability in Case No. 22-cv-648. <u>Id.</u> at Dkt. No. 24. Meanwhile, Judge Adelman granted the petitioner's motion for stay and abeyance in Case No. 22-cv-781, granted the petitioner's motion to voluntarily dismiss and dismissed the case without prejudice. <u>Loga-Negru</u>, Case No. 22-cv-781, Dkt. No. 39. The Seventh Circuit granted the petitioner's motion to dismiss as moot his appeal in Case No. 22-cv-781. <u>Id.</u> at Dkt. No. 49.

On October 27, 2025, the petitioner filed his third petition, asserting a violation of the Fourth Amendment, ineffective assistance of counsel and prosecutorial misconduct. <u>Logu Negru v. Miller</u>, Case No. 25-cv-1647-BHL, Dkt. No. 1. On November 18, 2025, Judge Ludwig denied the petitioner's motion to proceed without prepaying the filing fee and ordered him to pay the $5 fee by December 18, 2025. <u>Id.</u> at Dkt. No. 9. When the petitioner did not do so, Judge Ludwig dismissed the petition without prejudice for lack of prosecution and failure to comply with the court's order. <u>Id.</u> at Dkt. No. 12. The Seventh Circuit denied the petitioner's request for a certificate of appealability. <u>Id.</u> at Dkt. No. 23.

## IV.     The Petition

In the instant petition, the petitioner states that he was convicted of first-degree intentional homicide with use of a dangerous weapon and that he "pled guilty to the charge of treason (on colloquy) as 'no contest.'" Miller, Case No. 26-cv-499, Dkt. No. 1 at 2. The petitioner cites his most recent appeal (filed on August 22, 2023), and says that he argued ineffective assistance of counsel during the preliminary hearing, interference with privacy rights, DNA evidence, omission of material facts from the complaint, false statement of facts, due process rights and "hearsay/manifest injustice for plea withdrawal." Id. at 3. He states that he sought review from the Wisconsin Supreme Court on January 1, 2025 and that his petition was denied on March 13, 2025. Id.

Under the heading "state post-conviction relief," the petitioner lists his August 22, 2023 filing with the Wisconsin Court of Appeals, but there asserts that he raised "involuntary plea, Brady violations, ineffective assistance of counseling, ineffective assistance of appellate counsel." Id. at 4.

The petitioner lists four grounds for relief. First, he says that his counsel was ineffective "for not challenging the statements that formed the false allegations from the complaint" and for not challenging a few statements "provided to the police in a different contexxt [sic] than the one reported after the arrest before Miranda warnings." Dkt. No. 1 at 6. In support of this claim, the petitioner maintains that his statement "I killed Roxana" was not true because she was still alive when the EMT arrived and his statement was taken out of context. Id. According to the petitioner, his neighbor could not state on

10

the recording that the victim's wounds were inflicted at the location where she was found and he says that there was no DNA sample on the "hardware tool" (presumably the hatchet) on the neighbor's lawn. Id. at 7. The petitioner says that "[t]he victim was promised work-related benefits in return for what appeared to be through direct observations, sexual favors, or coercion through other forms of harassment and economic harm." Id. The petitioner says he was not given Miranda warnings until after he was taken to the station and a local hospital. Id. In the section of the form asking why he had not exhausted his state remedies on Ground One, he states that "[t]he context of quid pro quo harassment was never brought into the record, or to the attention of the state courts." Id.

As his second ground, the petitioner says that officers violated his Fourth Amendment rights by executing an overbroad warrant that did not extend to Illinois. Id. at 7. He argues that "overreaching occurred when the probable cause discovered on Calvin Ln extended unauthorized searches at motel 8, in [his] father's room." Id. The petitioner says that the judge did not appoint counsel on the competency determination and could not have approved a warrant for three different locations: Calvin Lane, Motel 8 and Arlington Heights, Illinois. Id. He adds that "[s]tipulations during plea bargaining in Wisconsin must be provident to supply the veracity of direct facts usually pleaded in support of charges. Despite the inventory searches, they failed to produce the contingency plans of the petitioner." Id. at 8. The petitioner says

11

that he did not exhaust this issue because postconviction counsel assigned by the public defender did not find "a merit in the record." Id.

As his third ground, the petitioner argues that the state and the judge "failed to assess the danger of the defender's hoousehold's [sic] disparate impact of the victim's undocumented status, or any associated causes of coercion." Id. at 8. He explains that the petitioner and the victim shared "a background of undocumented residency, same nationality, culture and history in a foreign nation where they lived for over 20 years during their formative youth." Id. at 8. He believes the "choices tactical Design made affected negatively the victim's conditions of employment through a dual purpose of hiring and adverse tangible tortious conduct that targeted [his and the victim's] household, and related property." Id. The petitioner says there is "a presumption of an exonerating legal motivator that enabled justifiable concerns by affecting the risks exposed to and the legitimacy of the actions undertaken to minimize alternative outcome of damages to the victim's dignity and character." Id. He adds, "[s]ince disparate impact covered the minority class to which an undocumented resident belong [sic], prejudice occurred through plea bargaining." Id. He says that he did not exhaust this claim because the judge "failed to call experts, investigators or witnesses," prejudicing him and his counsel lacked the capacity to make major decisions, "eliminating the value of trial." Id.

Fourth, the petitioner says that the preliminary hearing was defective and insufficient, "affected by the last minute introduction to[ ]counsel." Id. at 9.

12

The petitioner explains that he and his father came to Racine for reasons different than implied by the charges, that actions taken before their arrival in Racine were not listed in the complaint and that those facts could have come to light during the preliminary hearing. Id. He asserts that there was a "strong presumption of innocence because the accused had the reputation of a law-abiding citizen." Id. The petitioner adds that when he entered a no contest plea, Attorney Cafferty had other cases pending and that it is not clear if "he prioritized those clients or the undersigned." Id. He argues that post-conviction counsel "had the data available on Westlaw." Id. He says that he did not exhaust this claim because "[t]he court' [sic] decision of dismissal was based on insufficient funds, not merits." Id.

> The petitioner's request for relief states:
>
> DISMISSING the Complaint due to adeffective [sic] preliminary hearing. Employment tangibleactions [sic] belong to the state contract law, with few exceptions.
> An order making available the internal documents of Tactical Design policies.
> 1. dismiss the complaint and suppress the statements illegally obtained
> 2. invalidate the competency determination, and the discovery obtained in violation of the right to counsel until the preliminary hearing
> 3. assess the judicial prejudice related to any exonerating motivator
> 4. Property used beyond the determination of probable cause should be returned

Id. at 12.

## V. Analysis

Before addressing the petitioner's grounds for relief, the court must explain why this is not a successive petition even though the petitioner has

13

filed three other petitions challenging the same underlying conviction. Under 28 U.S.C. §2244(b)(3)(A), a petitioner may not file a second or successive application for *habeas* relief in the district court unless he first seeks and obtains an order from the appropriate court of appeals authorizing the district court to consider the application. A second or successive petition is one in which the petitioner is challenging the same conviction that he challenged in a previous petition that was decided on the merits. See Magwood v. Patterson, 561 U.S. 320, 331 (2010) (petition is successive if it challenges state-court judgment that was challenged previously).

The petitioner voluntarily dismissed two of his previous petitions and the third was dismissed for lack of prosecution and failure to comply with the court's order because the petitioner failed to pay the filing fee. All three dismissals were without prejudice. See Altman v. Benik, 337 F.3d 764, 766 (7th Cir. 2003) (second petition requires authorization by the Circuit only if first petition was "resolved in a way that satisfies a petitioner's one full and fair opportunity to raise a federal collateral attack"); Benton v. Washington, 106 F.3d 162, 165 (7th Cir.1996) (§2254 petition dismissed for failure to pay required filing fees not counted as first petition for purpose of determining successor status). No court in this district has yet addressed the merits of the petitioner's *habeas* petition.

This court will deny the instant petition on the merits because *habeas* relief is not available to the petitioner. First, the petitioner pled no contest to the charge of first-degree intentional homicide. The Wisconsin Court of Appeals

14

explained that the petitioner's no contest plea forfeited all nonjurisdictional defects, including constitutional claims. Loga-Negru, 2021 WL 2945590, at *4 (citing State v. Kelty, 294 Wis. 2d 62 (Wis. 2006)). According to the Seventh Circuit, "[i]t is well established that an unconditional plea of guilty operates as a waiver of all formal defects in the proceedings, including any constitutional violations that occurred before the plea was entered. A plea of no contest invokes the same waiver principle." Gomez v. Berge, 434 F.3d 940, 942–43 (7th Cir. 2006) (citations omitted); see also United States v. George, 403 F.3d 470, 472 (7th Cir. 2005) ("By pleading guilty a defendant normally surrenders an opportunity to contest the merits, waiving (not just forfeiting) all arguments that could have been raised earlier."). In Gomez, the petitioner entered a no-contest plea, and the Seventh Circuit ruled that this plea precluded him from "contesting the trial court's determination that he was not competent to represent himself at trial." Gomez, 434 F.3d at 943. The Seventh Circuit has reiterated this holding several times in the last decade or so. See Jackson v. Bartow, 930 F.3d 930 (7th Cir. 2019); United States v. Lockett, 859 F.3d 425, 427 (7th Cir. 2017); United States v. Stoller, 827 F.3d 591, 594 (7th Cir. 2016); Hurlow v. United States, 726 F.3d 958, 966 (7th Cir. 2013).

A guilty plea "represents a break in the chain of events which has preceded it in the criminal process." United States v. Adame-Hernandez, 763 F.3d 818, 825 (7th Cir. 2014) (quoting Tollett v. Henderson, 411 U.S. 258, 267 (1973)). That means that the petitioner cannot raise independent claims relating to a deprivation of rights that occurred before he entered the plea. Id.

15

His claims necessarily are limited to attacks on the state court's jurisdiction and the voluntariness of his plea. United States v. Broce, 488 U.S. 563, 574 (1989). The petitioner here does not make those types of claims—he has not attacked the state court's jurisdiction or the voluntariness of his plea. His constitutional arguments focus on things that happened before he pled no contest: counsel's failure to challenge information in the complaint, the validity of the warrants and statements made (or not made) at the preliminary hearing. The petitioner's no contest plea ends the discussion.

And even without the plea, the petitioner would face additional hurdles. He first argues that counsel was ineffective for not challenging statements in the complaint and statements he received the Miranda warning. He raised a similar argument on direct appeal, and the Wisconsin Court of Appeals wrote:

> To the extent that [the petitioner] is complaining about trial counsel's pre-plea performance, he has forfeited the right to do so. That is because his no contest plea forfeited all nonjurisdictional defects, including constitutional claims. *See State v. Kelty*, . . . 294 Wis. 2d 62 . . .. In any event, all of [the petitioner's] complaints about counsel's performance suffer from the same two flaws: they are conclusory and undeveloped. Accordingly, we decline to address them. *See State v. Pettit*, 171 Wis. 2d 627, . . . (Ct. App. 1992).

Loga-Negru, 2021 WL 2945590, at *4. The Wisconsin Court of Appeals declined to consider the petitioner's ineffective assistance of counsel claim because the petitioner had entered a plea *and* because the court determined that "[i]n any event, all of [the petitioner's] complaints about counsel's performance suffer from the same two flaws: they are conclusory and undeveloped." Id. This constitutes an independent-and-adequate-ground-based state procedural default that bars this federal court from considering the merits of the claim.

16

Prihoda v. McCaughtry, 910 F.2d 1379, 1382 (7th Cir.1990) (if state court denies claim on basis of state procedural rule that court applies regularly and consistently, federal review of claim is barred).

The petitioner's second ground for relief focuses on the search warrants and asserts violations of the Fourth Amendment. "A Fourth Amendment claim ordinarily may not be raised in a *habeas* proceeding following a plea of guilty [because] the claim is irrelevant to the constitutional validity of the conviction." Haring v. Prosise, 462 U.S. 306, 321 (1983); see also Sanders v. Israel, 717 F.2d 422, 423 (7th Cir. 1983) ("An illegal arrest . . . is an insufficient ground, standing alone, upon which to vacate a conviction in federal *habeas* proceedings.") And again, the alleged Fourth Amendment violations would have preceded the petitioner's no contest plea.

Ground three does not appear to be a claim that is cognizable on *habeas* review. In conducting *habeas* review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States. 28 U.S.C. §2254(a). The petitioner talks about how he and the victim shared the same background, nationality and culture. Dkt. No. 1 at 8. He alludes to "tortious conduct" that targeted their household and property. Id. The petitioner argues that the judge failed to "assess the danger of the defender's household's disparate impact of the victim's undocumented status." Id. To the extent the petitioner is arguing that the state court failed to consider or misapplied sentencing factors, that claim arises under state law. Dellinger v. Bowen, 301 F.3d 758, 764 (7th Cir. 2002). Even liberally construing the

17

petitioner's allegations, ground three is not a viable claim that arises under the Constitution, laws or treaties of the United States.

Finally, in ground four, the petitioner argues that the preliminary hearing was "defective and insufficient." Dkt. No. 1 at 9. The petitioner asserts that he and his father were in Racine for reasons other than what was stated in the charges and that the "preliminary hearing was the only hearing that could bring to light these facts." Id. at 9. The petitioner speculates that his counsel may or may not have prioritized other clients over the petitioner. Id.

To the extent that he is challenging the preliminary hearing, the petitioner first challenged the preliminary hearing in July 2023 when he filed a "motion to invalidate the preliminary hearing decision" in the circuit court. Loga-Negru, 2024 WL 4690292, at *1. On appeal from that decision, the petitioner argued that counsel was ineffective at the preliminary hearing and sentencing hearing. Id. The Wisconsin Court of Appeals found that the claims were procedurally barred by Escalona-Naranjo, 185 Wis. 2d 168, and were insufficiently developed and forfeited. Id. The court wrote:

> "We need finality in our litigation." [*Escalona-Naranjo*] at 185. Therefore, any claim that could have been raised in a prior postconviction motion or on direct appeal cannot form the basis for a subsequent motion under WIS.STAT. § 974.06 unless the defendant demonstrates a sufficient reason for failing to raise the claim earlier. *Escalona-Naranjo*, 185 Wis. 2d at 185. Furthermore, the defendant may not relitigate a matter previously litigated "no matter how artfully the defendant may rephrase the issue." *State v. Witkowski*, 163 Wis. 2d 985, 990, . . . (Ct. App. 1991).
>
> Whether a defendant's claim is procedurally barred and whether a sufficient reason exists for the failure to previously assert the claim

18

present questions of law we review de novo. *State v. Kletzien*, . . . 331 Wis. 2d 640 . . ..

Applying these principles to the case at hand, we conclude that [the petitioner's] latest postconviction motions are procedurally barred. [The petitioner] raises claims in his postconviction motions that he either already raised or could have raised previously. As noted, we previously rejected [the petitioner's] claims of ineffective assistance of counsel in our 2021 per curiam opinion and the 2024 summary opinion and order.

To the extent [the petitioner] asserts different claims from those previously raised, he is required to allege a sufficient reason why he did not raise these claims in his prior appeals. *See Escalona-Naranjo*, 185 Wis. 2d at 185. [The petitioner's] motions, however, fail to assert any reason, let alone a sufficient reason, for failing to raise these claims earlier.

Moreover, [the petitioner'] appeal brief makes incoherent arguments that are not adequately developed and fails to apply the legal authorities he cites to the facts of the case. Appellate rules require arguments to be supported by "citations to the authorities, statutes and parts of the record relied on." WIS.STAT. RULE 809.19(1)(e) Although [the petitioner] is representing himself in this appeal, his briefs must still comply with these procedural requirements. *See Waushara County v. Graf,* 166 Wis. 2d 442, 452, . . . (1992). It is not our responsibility to develop arguments for a party, and we are not required to address arguments that are undeveloped or not supported by citations to the record. *See Doe 1 v. Madison Metro. Sch. Dist.,* . . . 403 Wis. 2d 369, . . . (appellate courts "do not step out of our neutral role to develop or construct arguments for parties" (citation omitted)); *Madely v. RadioShack Corp.,* . . . 306 Wis. 2d 312, . . . ("[W]e have no duty to scour the record to review arguments unaccompanied by adequate record citations.").

The bottom line is that the petitioner's challenge to the preliminary hearing must fail because it preceded his no contest plea. It's not clear whether his allegation that counsel may or may not have prioritized other clients relates to his preliminary hearing claim even though it is mentioned in the same paragraph. In any event, the petitioner simply states that Attorney Cafferty had

19

other cases pending. Dkt. No. 1 at 9. Successful attorneys have multiple clients; that fact, standing alone, does not create a conflict or give rise to a claim for ineffective assistance. The petitioner says that "it is not clear if he prioritized those clients or the undersigned." Id. If it is not clear to the petitioner, it is not a valid claim.

There needs to be finality in litigation. The petitioner has had opportunities to file three rounds of appeals in the state court and four *habeas* petitions in federal court. He should not be encouraged to proceed further when there is no viable path to *habeas* relief. The court will deny the petition for a writ of *habeas corpus.*

## VI.     Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or decline to issue a certificate of appealability when it enters a final order adverse to the petitioner. A court may issue a certificate of appealability only if the petitioner makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or for that matter, agree that) the petitioner should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability because it finds that reasonable jurists could not debate that the petitioner's claims are barred and not cognizable on *habeas* review.

## VII. Conclusion

The court **DENIES WITHOUT PREJUDICE** the petitioner's motion to proceed without prepaying the filing fee. Dkt. No. 2

The court **DENIES** the petition for writ of *habeas corpus* filed under 28 U.S.C. §2254. Dkt. No. 1.

The court **DECLINES** to issue a certificate of appealability.

The court **ORDERS** that the case is **DISMISSED**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 30th day of July, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

21